UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MAINE HUMAN RIGHTS COMMISSION, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) 1:10-cv-00180-JAW ) |
| COFFEE COUPLE LLC, et al., | ) ) |
| Defendants | ) |

**RECOMMENDED DECISION ON
MOTION FOR DEFAULT JUDGMENT AND
DAMAGES HEARING**

This matter was referred to me for a report and recommended decision on the issues of whether default judgment should enter against the defendants, and, if so, what amount of damages should the plaintiffs recover. (See Doc. No. 34.) The case is based upon five plaintiffs' claims that they were discriminated against by the Boyles under federal and state employment laws. The allegations include two cases of racial discrimination (Verville and Larson), a whistleblower's violation (Verville), two cases of discrimination based on gender/pregnancy (Page and Corliss), and one case of disability discrimination (Patti). After continuing the matter once at the plaintiffs' request (see Doc. No. 37), a hearing was held on May 25, 2011. Three named plaintiffs appeared and testified. A fourth individual on whose behalf the Maine Human Rights Commission brought this action also appeared and testified. The fifth individual named in the Maine Human Rights Complaint, Michael Larson, did not appear and no testimony was offered regarding what injuries, if any, he may have suffered. Based upon the record evidence, I now recommend that the court grant the motion for default judgment on the second amended complaint and enter judgment for the Maine Human Rights Commission on behalf of Patti, Page,

Corliss, and Verville and for Patti, Page and Corliss individually. I do not recommend entering judgment on behalf of Michael Larson.

## Default Judgment on the Second[1] Amended Complaint

Karen and Calvin Boyle, residents of Moncton, New Brunswick, Canada, are the sole shareholders of Coffee Couple, LLC. The docket activity in this case reflects that the First Amended Complaint was removed to this court by Tim Horton's USA on May 11, 2011. The removing defendant was dismissed from the action on September 25, 2010. (Doc. No. 25.) Following some preliminary skirmishes involving the Boyles and Coffee Couple, LLC, Chief Judge Woodcock struck any earlier defaults and acknowledged the letter answers filed in this court by all three pro se defendants. (See Order Striking Default at 11, Doc. No. 14; Answer and Affirmative Defenses filed by all three defendants, Doc. No. 11.) While the Boyles appeared to be actively participating in the action initially, they have not communicated with the court since July 20, 2010. The court has sent them notice of all docket activity at the last known address provided by them and none of those notifications have been returned.

After having been given leave to do so, the plaintiffs filed their Second Amended Complaint on October 28, 2011. (Doc. No. 29.) On December 20, 2010, the plaintiffs moved for the entry of default (Mot. Default, Doc. No. 30), indicating that the defendants had been served by regular mail. (Id. ¶ 2.) This method of service complies with Federal Rule of Civil Procedure 5(a)(1)(B), (b)(2)(C) according to plaintiffs. The clerk entered default on January 11, 2011, and copies of the entry of default were dutifully mailed to the Boyles in Canada.

---

[1] The second amended complaint differed from the first amended complaint in respect to Larson's claim against Coffee Couple, LLC. Since I have not recommended the entry of any award with respect to that claim, it seems fair to say that the Seconded Amended Complaint's only departure from First Amended Complaint is the deletion of Tim Horton's USA as a defendant and the existence of a count on behalf of Michael Larson against Coffee Couple, LLC.

The current motion for default judgment was filed on January 28, 2011, and referred to me on March 25, 2011. In its order of referral, the court noted "where the Defendants have entered a pro se appearance and indicated an intention to defend the lawsuit, the Court is reluctant to enter a default judgment in favor of each of plaintiffs without a greater assurance that the Defendants have reversed course and decided not to defend the entire lawsuit." (Order Mot. Default & Mot. Referral at 2, Doc. No. 34.) The Court cited the First Circuit's reasoning in Coyante v. Puerto Rico Ports Auth., 105 F.3d 17, 23 (1st Cir. 1997) in expressing its reluctance to proceed directly to a damages hearing without giving the defendants the opportunity to appear and explain their default as to the Second Amended Complaint. The Court ordered the plaintiffs to serve a notice of hearing "by registered or certified mail at Defendants' last known address." (Id. at 3.)

On March 25, 2011, I issued a notice of hearing on the motion for default judgment and on the issue of damages, setting the hearing on April 27, 2011, in order to give the plaintiffs sufficient time to comply with the Court's order. A copy of the notice of hearing was sent to the defendants' last known address by regular mail by the clerk and has never been returned. On April 25, 2011, the plaintiffs' counsel called the court requesting a continuance of the hearing because they had not fully complied with the court's March 25 directive in that they had not sent notice to the Boyles in Canada by registered or certified mail. They had attempted to make service via Federal Express, but had been unable to complete service. The plaintiffs requested a continuance. Rather than grant their request, I indicated that the matter would remain on the docket for hearing on April 25, 2011, and in the event the Boyles appeared I would address the issue of the default first. The Boyles did not appear at the April 25, 2011, hearing. (See Doc. No. 37.) At the plaintiffs' counsel's request I rescheduled the hearing to May 25, 2011, in order

for them to attempt to comply with the explicit order that the notice be sent by registered or certified mail. Again, the clerk sent notice of all docket activity to the last known address and the mail has never been returned.

At the May 25, 2011, hearing the plaintiffs introduced Exhibit No. 2, a record of the attempts by the Canadian postal authorities to deliver the notice of hearing to the Boyles. Between May 3 and May 19, 2011, Canadian postal authorities made four attempted deliveries to the residence at the last known address. No one appeared to accept and sign for the mail. In these circumstances I conclude the plaintiffs have taken all available measures to provide the notice of hearing to the Boyles. Furthermore, the Boyles themselves have not notified the court regarding any change of address nor have they had any apparent communication with the court since July 20, 2010, over ten months ago. In these circumstances I conclude that the Boyles have not shown any intent to appear and defend against the Second Amended Complaint or any other aspect of this case and entry of judgment by default is the appropriate course of action.

## Damages Hearing

*Proposed Findings of Fact*

Coffee Couple, LLC is a limited liability corporation whose sole shareholders are Karen and Calvin Boyle of Moncton, Canada. The Boyles did business under the Tim Horton name at facilities in Old Town and Lincoln, Maine. At the Old Town Tim Horton's alone there were between 19 to 20 employees employed by Coffee Couple, LLC.

1. Michael Larson
    a. Larson did not appear and testify and so I have no information to base any finding of damages.

b. The Second Amended Complaint was not signed under oath by Larson nor has Larson submitted an affidavit regarding liability or damages issues.

c. The complaint alleges that Calvin Boyle told Larson he would not hire a Native American.

d. The allegations in the complaint, without more, are insufficient for me to make proposed findings or enter a recommendation regarding the award of damages, including punitive damages and civil penalties as requested by the Commission.

e. In Count VIII the Commission sued Calvin Boyle on behalf of Michael Larson under the Maine Human Rights Act and in Count X of the complaint the Commission sued Coffee Couple, LLC on behalf of Larson.

2. Anthony Verville

a. Verville was employed at a Tim Horton franchise run by Calvin Boyle and Coffee Couple, LLC.

b. Verville is a mixed race individual, both Caucasian and African American.

c. On October 29, 2008, Calvin Boyle referred to him as a "white nigger" among other names.

d. The name calling erupted because Verville called Calvin Boyle complaining about being short changed in his pay check and threatening to report Boyle to the authorities. Even before he was called racially derogatory names Verville intended to leave his employment at Tim Horton's because of what he perceived as Boyle's illegal payroll practices.

e. Verville was shocked and surprised to be called these various names.

f.  Although he attempted to find employment, he remained unemployed until April 29, 2009, a period of 24 weeks of unemployment.

g.  When working at Tim Horton's Verville earned $7.75 per hour and work a 40-hour week.

h.  His total back pay damages are $7,440.00.

i.  The extended period of unemployment caused Verville other financial difficulties resulting in him being unable to afford books for classes to continue with his post-secondary education. Verville had wanted to study culinary arts and was not able to do so.

j.  The statements made and the motivation for those statements arose from discriminatory racial animus and hastened Verville's departure from employment.

k.  Verville was saddened by this experience and felt that his self-esteem was certainly damaged by Boyle's statements.

l.  In Count VII the Commission on behalf of Verville has sued Coffee Couple, LLC and Calvin Boyle under the Maine Human Rights Act.

3. Brittany Corliss

a.  Corliss began employment at the Boyles' Old Town facility in August 2007.

b.  She initially worked on the soup and sandwich counter, making and assembling soups and sandwiches.

c.  During the early period of her employment she was never disciplined nor reprimanded.

d.  Corliss typically worked 40 hours per week and approximately 8 hours of overtime per month. She was paid $7.75 per hour.

e. Corliss learned she was pregnant at the end of May 2008 when she developed severe cramps at work and had to leave to go to the hospital where she learned of her pregnancy.

f. Corliss returned to work the next day and reported to Ann, her supervisor, that she was pregnant and Ann conveyed the information to Karen Boyle, who held a management role at the facility.

g. After revealing her pregnancy, Corliss continued to report to work without incident for a period of time.

h. One morning she developed morning sickness and left work early, after arranging with a co-worker to cover the remainder of her shift. The arrangements for coverage were made with Karen Boyle's permission, although Boyle expressed irritation that Corliss was leaving early.

i. When Corliss returned to work the next day she discovered that her name had been taken off all future shifts and she was no longer employed.

j. Calvin Boyle told her they were sick of everything, presumably referring to her pregnancy and recent morning sickness.

k. Corliss was embarrassed in front of her co-workers because of the manner of her discharge and the way Calvin and Karen Boyle spoke to her.

l. Corliss was unemployed for approximately one month.

m. Since she lived pay check to pay check, the loss of a month's income caused her to lose her car due to lack of insurance payments and her apartment due to inability to pay the rent. Corliss had to move home to live with her parents.

n. Corliss enjoyed living on her own and was depressed to have to return to her parents' home.

o. Corliss made $310.00 per week at Tim Horton's and she lost $1240.00 in regular wages plus $93.00 in overtime wages, totaling $1333.00, as a result of her discharge.

p. In Count V of the Second Amended Complaint Corliss and the Commission on her behalf have sued Coffee Couple, LLC, Calvin Boyle, and Karen Boyle under the Maine Human Rights Act. Corliss has sued Coffee Couple, LLC in Count VI of the complaint, alleging a federal violation under Title VII.

4. Jessica Page

a. Page lives in Lincoln, Maine with her parents.

b. She started working at the front counter of Tim Horton's in August 2008. She took orders from customers and worked at the drive through.

c. She was paid $7.75 per hour and had no performance problems during the first four months of her employment.

d. When she became pregnant she told Ann, the supervisor, about the pregnancy as a courtesy.

e. Ann told Karen Boyle who did not respond in a positive fashion, failing to congratulate her or say anything positive. Karen Boyle made her feel bad.

f. Page announced her pregnancy the beginning of December. She did not miss any work or have any pregnancy related problems.

g. Karen Boyle terminated her on December 10, 2008, her explanation being that Page had called in too much and was not dependable.

h. Approximately one month earlier, before announcing her pregnancy, Page had called in because her car would not start. She had arranged for another worker to cover for her and no one expressed any anger at that time. Page believes the sole reason for her termination was her pregnancy.

i. Page remained unemployed or with only sporadic employment for fourteen months, working brief periods at LaBree's Bakery and Kohl's store. She had planned on taking only four weeks off surrounding the birth of her child.

j. Page made close to $300.00 per week at Tim Horton's. After subtracting the four weeks maternity leave she planned on taking and the sporadic wages she earned, Page's back pay claim is $ 11,440.00.

k. In Count III of the Second Amended Complaint the Commission and Page have sued Coffee Couple, LLC under the Maine Human Rights Act. In Count IV Page has sued Coffee Couple, LLC under Title VII of the federal employment discrimination statutes.

5. Susan Patti

a. Patti began working at the Old Town Tim Horton's in October 2007.

b. Patti has a number of physical and mental disabilities including panic disorder, post traumatic stress disorder, carpal tunnel syndrome, scoliosis, and a congenital hand deformity.

c. When Patti began employment she explained to her employer that her panic attacks were often triggered by men yelling at her in a loud voice. Calvin Boyle proceeded to yell at her loudly every day causing Patti increased

anxiety and weight loss. Patti had difficulty sleeping because of Boyle's verbally abusive behavior toward her.

d. When Patti's carpal tunnel syndrome flared up, she asked, on her doctor's recommendation, for a reasonable accommodation.

e. The accommodation request by Patti was that she be allowed to lift the coffee pot with two hands rather than just by the handle. In order to accomplish that Patti needed to have a pot holder mitt for her other hand.

f. Calvin Boyle told her that attaching a pot holder to her uniform would look "gay" and was not in keeping with the Tim Horton's uniform and he would not accommodate her request.

g. He also would not honor Patti's request that she not be assigned jobs that required her to lift more than ten pounds, a restriction necessitated by her back condition.

h. Finally, Patti's physical conditions were aggravated by exposure to cold, yet Calvin Boyle insisted that she work at the drive through window in the winter and refused to allow her to wear mittens.

i. The cold aggravated her carpal tunnel syndrome so much that Patti had to have surgery.

j. When she requested a decrease in her hours, Boyle began targeting her for extra hours.

k. Boyle swore at her repeatedly, often in relationship to the brace that she had to wear on her wrist as a result of the carpal tunnel syndrome.

l. Eventually Patti's weight had dropped to 97 pounds and she needed to increase the dosage of her anxiety medications because of Calvin Boyle's behavior toward her.

m. Finally on February 18, 2008, Patti had an extreme panic attack and left work. Karen Boyle hollered at her in a very loud manner causing Patti to leave the store. Karen Boyle said to her, "Good luck finding another job with that f---in' hand." This conduct amounted to a constructive discharge from employment.

n. Patti was out of work until April 1, 2008, when she went to work at Kmart where she remained until May 15, 2008, when she began to receive disability payments from the Social Security Administration. Patti does not currently work. Her back pay wage claim is $1,767.00.

o. Both Patti and the Commission on her behalf have sued Coffee Couple, LLC in Count I of the second amended complaint under the Maine Human Rights Act. In Count II of the second amended complaint she has sued Coffee Couple, LLC and Karen and Calvin Boyle under the federal Americans with Disabilities Act. In Count IX of the second amended complaint Patti has sued Karen and Calvin Boyle under the Maine Human Rights Act.

*Conclusions of Law*

1. The Maine Human Rights Commission is authorized by statute to bring an action on behalf of victims of discrimination. The action is brought by the Commission, but the named victims are entitled to use of the proceeds and have the right to intervene in the action. 5 M.R.S. § 4613 (1).

2. In those cases where the Maine Human Rights Commission itself brings the action, as in this case, the court may impose a civil penalty against the respondent. The civil penalty may be payable for the use of the victim of the discrimination. 5 M.R.S. § 4613(2)(B)(7).

3. In cases of intentional discrimination the court may award compensatory damages, including damages for loss of enjoyment of life and emotional pain and suffering, against the employer of more than 14 employees up to the amount of $50,000.00. 5 M.R.S. § 4613 (2)(B)(8)(e)(i).

4. Pursuant to the Maine Human Rights Act, it is unlawful employment discrimination for an employer to treat a pregnant woman who is able to work in a different manner from other persons who are able to work. 5 M.R.S. § 4572-A (2).

5. Bethany Corliss and Jessica Page were discriminated against based upon their pregnancy.

6. Susan Patti was discriminated against based upon both her mental and physical disabilities. Both Patti's panic disorder and her carpel tunnel syndrome qualify as physical or mental disabilities within the definition set forth at 5 M.R.S. § 4553 (7-A), as well as under the ADA. Karen and Calvin Boyle's conduct toward Patti was unlawful employment discrimination under 5 M.R.S. § 4572(1).

7. The question of whether there is individual supervisor liability under the MHRA has never been definitively decided by the Maine Law Court, but to the extent liability could be imposed upon Karen or Calvin Boyle the remedies would be limited to attorney fees or civil penal damages, because there are no other remedies

pursuant to the MHRA that would apply to an individual defendant. Gordon v. Cummings, 2000 ME 68, ¶ 11, 756 A.2d 942, 945.

8. The federal district court in Maine has consistently applied federal precedent to reject the notion of individual liability under the MHRA, post-Gordon v. Cummings. See Gough v. E. Me. Dev. Corp., 172 F.Supp.2d 221 (D.Me. 2001)(Singal, D.J.); Miller v. Hall, 245 F.Supp. 2d 191 (D.Me. 2003)(Cohen, Mag. J.) (affrm'd Singal, D.J.); Roundtree v. Fryeburg Acad., 2:08-cv-00001-GZS, 2008 WL 2357622 (D. Me. June 5, 2008)(Kravchuk, Mag. J.) affrm'd, 2008 WL 2522125 (D. Me. June 15, 2008)(Singal, D.J.); Moore v. Youth Promise, 2:03-cv-00229-DBH, 2003 WL 22284611(D. Me. Oct. 3, 2003)(Hornby, D.J.)(not reported). The First Circuit has declined to enter the fray. See Morrison v. Carleton Woolen Mills, Inc.,108 F.3d 429 (1st Cir. 1997)(discussing the issue of individual liability under the Maine Human Rights Act, vacating judgment against individual and remanding for further development of the record on the unsettled issue).[2]

9. In the present case neither Calvin nor Karen Boyle has contested his or her individual liability under the MHRA and the state law precedent -- unlike federal precedent under Title VII, see Fantini v. Salem State College, 557 F.3d 22, 28-30 (1st Cir. 2009) -- is unsettled on the issue.

10. Neither the United States Supreme Court nor the First Circuit Court of Appeals has addressed the issue of whether there is individual liability under the ADA, but the majority of circuits, along with a number of district courts, have previously held that the ADA does not provide for individual liability. See, e.g., U.S. E.E.O.C. v.

---

[2] The record in that case shows that shortly after the mandate issued there was a conference of counsel followed by a stipulation of dismissal. (See 1:93-cv-00229-EWB, Doc. Nos. 94, 95, 96.)

AIC Sec. Investigations, Ltd., 55 F.3d 1276, 1279 -82 (7th Cir. 1995); see cf. Dearth v. Collins, 441 F.3d 931, 933 -34 & n.2 (11th Cir. 2006); Wathen v. General Elec. Co., 115 F.3d 400, 404 n.6 (6th Cir.1997). According to a recent survey of the law by District Court Judge Daniel R. Domínguez this is still the lay of the land in the Supreme Court and our Circuit. See Rey-Cruz v. Forensic Science Institute, ___F.Supp.2d___, 2011 WL 1868841 n. 1 (D.P.R. May 16, 2011) (collecting cases).

11. When compensatory or back pay damages are recovered under both federal antidiscrimination statutes and state law those damages are concurrent and can only be recovered once, thereby avoiding "double recovery" or a windfall to the plaintiff. Caldwell v. Federal Exp. Corp., 908 F. Supp. 29, 34 (D. Me. 1995) ('[I]t is true that the Plaintiff would be barred from receiving separate emotional damages for employment discrimination covered by Title VII or the MHRA[.]"); see also Keisling v. SER-Jobs for Progress, Inc., 19 F.3d 755, 757 n.1 (1st Cir. 1994).

12. As each plaintiff is recovering a civil penalty under the Maine Human Rights Act, I am not persuaded that this is an appropriate case for the award of punitive damages under either federal, see Kolstad v. American Dental Ass'n, 527 U.S. 526 (1999) (Title VII Claim); see also E.E.O.C. v. Federal Express Corp., 513 F.3d 360, 371 - 372 (4th Cir 2008) (discussing Kolstad in the context of an ADA claim), or state, see Batchelder v. Realty Res. Hospitality, LLC, 2007 ME 17, ¶¶ 12- 25, 914 A.2d 1116, 1121-25, law. I have made no factual findings that would support the heightened standard called for when awarding punitive damages under the Maine Human Rights Act. See id.

Based upon the foregoing findings of fact and conclusions of law, I recommend that the Court enter judgment as follows[3]:

1. On Count I of the Second Amended Complaint: Judgment for Susan Patti against Coffee Couple, LLC under the Maine Act in the total amount of $7,500.00 civil penalty, $1,767.00 in back pay and $ 20,000.00 in compensatory damages, plus costs and attorney fees.

2. On Count II of the Second Amended Complaint: Judgment for Susan Patti against Coffee Couple, LLC under the ADA in the amount of $1,767.00 in back pay and $20,000.00 in compensatory damages, plus costs and fees, concurrent with the damage award in Count I. Judgment for Karen and Calvin Boyle on Count II.

3. On Count III of the Second Amended Complaint: Judgment for the Commission on behalf of and payable to Jessica Page against Coffee Couple, LLC under the Maine Act in the total amount of $2,500.00 civil penalty, $11,440.00 in back pay and $1,000.00 in compensatory damages, plus fees and costs.

4. On Count IV of Second Amended Complaint: Judgment for Jessica Page against Coffee Couple, LLC under Title VII in the total amount of $11,440.00 in back pay and $1,000.00 in compensatory damages, plus fees and costs, concurrent with the recovery on Count III.

5. On Count V of the Second Amended Complaint: Judgment for the Commission on behalf of and payable to Brittany Corliss against Coffee Couple, LLC under the

---

[3] Clearly Susan Patti suffered the most emotional and physical pain and suffering. By contrast, Verville and Page appeared to have suffered minimal emotional distress and no physical symptoms. Corliss, a longer term employee, was more emotionally distraught by the circumstances of her termination. Additionally, she mitigated her back pay damages very effectively and her total recovery should not be substantially reduced because her back pay damages are very small. I offer this explanation to put into context the differing damage amounts. Obviously if four separate cases had been filed, each case would have been determined on its own merits and that is what I tried to do in fashioning this recommended decision.

Maine Human Rights Act in the total amount of $2,500.00 civil penalty, $ 1,333.00 in back pay, and $ 10,000.00 in compensatory damages, plus fees and costs. And also a $1,000.00 civil penalty against both Calvin and Karen Boyle individually, plus fees and costs.

6. On Count VI of the Second Amended Complaint: Judgment for Brittany Corliss against Coffee Couple, LLC under Title VII in the total amount of $1,333.00 in back pay and $ 10,000.00 in compensatory damages, plus fees and costs, concurrent with the recovery on Count V.

7. On Count VII of the Second Amended Complaint: Judgment for the Commission on behalf of and payable to Anthony Verville against Coffee Couple, LLC under the Maine Act in the total amount of $2,500.00 civil penalty, $7,440.00 in lost wages, and $1,000.00 in compensatory damages, plus fees and costs, and a $1,000.00 civil penalty against Calvin Boyle individually, plus fees and costs.

8. On Count VIII of the Second Amended Complaint: Judgment for Calvin Boyle.

9. On Count IX of the Second Amended Complaint: Judgment for Susan Patti against both Karen and Calvin Boyle individually in the amount of a $2,500.00 civil penalty against each defendant, plus fees and costs.

10. On Count X of the Second Amended Complaint: Judgment for Coffee Couple, LLC.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a

copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

June 8, 2011